IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MARY GETER**                                                                                          **PLAINTIFF**

**v.**                                                              **CIVIL ACTION NO.: 3:25-cv-463-HTW-LGI**

**JACKSON MUNICIPAL AIRPORT AUTHORITY**                                      **DEFENDANT**

FIRST AMENDED COMPLAINT
<u>JURY TRIAL DEMANDED</u>

**COMES NOW** Plaintiff, Mary Geter, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages against Defendant Jackson Municipal Airport Authority, for violations of her rights pursuant to Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 2000(e) *et seq*. As more specifically set forth below, Plaintiff has been subjected to a hostile work environment, retaliation, sexual harassment, and sex discrimination in the workplace. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

<u>**THE PARTIES**</u>

1.     Plaintiff, Mary Geter, is an adult female citizen of Madison County, Mississippi.

2.     Defendant, Jackson Municipal Airport Authority, was timely served with process by serving Jean C. Frazier, Commissioner for JMAA, 100 International Drive, Suite 300, Jackson, Mississippi 39208.

<u>**JURISDICTION AND VENUE**</u>

3.     This Court has federal questions and civil rights jurisdiction for actions that arise under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 2000(e) *et seq*.

4.     This Court has personal and subject matter jurisdiction over the Defendant

1

and venue is proper in this Court.

5. Plaintiff timely filed a Charge of Discrimination with the EEOC, on June 12, 2023, a true and correct copy of which is attached to Plaintiff's Original Complaint as Exhibit "A" [Doc. 1-1]. On October 26, 2023, Plaintiff amended her Charge of Discrimination with the EEOC, a true and correct copy of which is attached to Plaintiff's Original Complaint as Exhibit "B" [Doc. 1-2]. On April 4, 2025, the EEOC issued a Dismissal and Notice of Right to Sue, a true and correct copy of which is attached to Plaintiff's Original Complaint as Exhibit "C" [Doc. 1-3]. Plaintiff timely filed this cause of action on June 25, 2025, within ninety (90) days of receipt of her Dismissal and Notice of Right to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 59-year-old female resident of Madison County, Mississippi.

7. Plaintiff was hired on November 16, 2021, as a Contract Compliance Specialist at the Jackson Municipal Airport Authority (JMMA).

8. From June 2022 until October 2022, Plaintiff's direct supervisor was John Brown. In June 2022, John Means was promoted to the position of Interim Chief Executive Officer and then became Plaintiff's direct supervisor.

9. In October 2022, Marvin Buckhalter replaced John Means as Plaintiff's new supervisor as the DBE Director.

10. Frequently, Mr. Buckhalter made the statement that "women are fifty cents and a dime," referred to women as "girls," and touched female co-workers inappropriately. He also gave Plaintiff a poor performance evaluation in December 2022.

11. Plaintiff also observed Mr. Buckhalter touch female co-worker inappropriately, (i.e., frontal hugging even when the women did not want it) and refer them condescendingly as "girls".

12. Also, Mr. Means frequently made statements that women were dumb and did not belong in certain job roles.

13. During November 2022, Plaintiff reported Mr. Buckhalter's sex discriminatory statements to Human Resources Representatives Samuel Hudson and Kenntria Cotton. Throughout Plaintiff's employment, Mr. Buckhalter made many misogynistic comments to women in the workplace, including Plaintiff.

14. Around December 19, 2022, Mr. Buckhalter gave Plaintiff a job performance evaluation that stated that Plaintiff gave too much pushback, did not turn in work, and missed deadlines.

15. Plaintiff contends these allegations were false.

16. On or around December 22, 2022, Board of Commissioners Chairman Warren Herring announced that moving forward Patrick Minor would replace Mr. Buckhalter as Plaintiff's supervisor.

17. During or around December 2022, Plaintiff applied for the position of Director of Disadvantage Business Enterprise (DBE).

18. Plaintiff, however, was passed over for the position and Mr. Means selected Tina Cox.

19. Despite Mr. Means' efforts, however, the Board of Commissioners refused to hire Ms. Cox.

20. Plaintiff contends that Ms. Cox was less experienced and less qualified for

the position than she (Plaintiff) was.

21. Ms. Cox has no experience with DBE regulations or requirements; she is not certified for reporting by the FHWA.

22. She has no airport inspection experience, no training with B2G systems, and no experience with federal reporting of Title VII, ADA.

23. Ms. Cox's experience was in real estate from 2016 to 2023.

24. Plaintiff contends Mr. Means' effort to place Ms. Cox in the position was a pretext for retaliation against her after she made the complaint of a hostile working environment and also sex discrimination in November 2022.

25. During January 2023, JMAA allegedly disciplined Mr. Buckhalter for making the sex discriminatory statements reported by Plaintiff in November 2022.

26. Plaintiff contends, however, that this only fueled the retaliatory animus against her by Mr. Buckhalter but also by Mr. Means and Director of Human Resources (Mr.) Andrea Moore and Patrick Minor.

27. Moreover, despite whatever alleged discipline was implemented against Mr. Buckhalter, he was still allowed to remain in his recently promoted position of Acting DBE and Director of Procurement.

28. On May 23, 2023, Mr. Minor provided Plaintiff with a write up which alleged that she displayed insubordinate behavior toward Mr. Means during a budget meeting.

29. Specifically, the write-up alleged that Plaintiff spoke condescendingly to Mr. Means, used an aggressive tone, and was disrespectful to him.

30. Plaintiff contends this allegation was false, was a pretext for ongoing

4

retaliation against her after she complained of sex discrimination in December 2022, and she refused to sign the write-up.

31. On June 12, 2023, Plaintiff filed an EEOC Charge of sex discrimination and retaliation.

32. On June 30, 2023, CEO Rosa Beckett informed Plaintiff that she was terminated. In a letter to Plaintiff, Ms. Beckett wrote the following:

"…Recently, you have engaged in inappropriate conduct including, but not limited to:

1. Unauthorized procurement of contract services;
2. Misrepresentation/misstatement of information to management;
3. Dishonesty, including falsifying or altering any document, record, or report relating to JMAA or relating to employment, such as a timecard, employment application, medical report, or expense reimbursement request and including providing false or misleading information and/or failing to provide truthful and complete information in connection with any investigation;
4. Failure to disclose a conflict of interest that could result in financial harm to JMAA and/or JMAA's reputation;
5. Failure to report any accident, misconduct, or rule violation to the appropriate representative of JMAA or failing to cooperate with and/or failing to provide information requested in connection with any investigation; and
6. Failure to disclose a personal interest that is or might be adverse to the best interests of JMAA or which influences or might influence an employee to act in a manner that is not in the best interest of JMAA."

33. Plaintiff contends these allegations are false.

5

34. On June 8, 2023, JMAA participated in a joint work session with the Mississippi Department of Transportation.

35. The work session featured several speakers, including Epic Resources LLC (ER) Director Shellie Michael and W2 Aviation Consulting (W2-AC) CEO Woodrow Wilson.

36. Following this event, apparently, allegations were made by ER that Plaintiff had agreed to pay ER $40,000.

37. Plaintiff contends this allegation was false and that the actual approved amount allocated for ER was only $4,800.

38. Plaintiff explained this discrepancy to Ms. Beckett, but apparently her explanation was disregarded.

39. Plaintiff contends she was falsely accused of agreeing to $40,000 in contractual services from ER without prior approval.

40. Plaintiff maintains she never procured these services as alleged.

41. She concedes she had previously engaged ER for different contracts, but those were always for amounts under $5,000.00 and were properly authorized.

42. Ms. Beckett also asked Plaintiff if JMAA was responsible for paying Mr. Wilson for his services at the event.

43. Plaintiff responded that JMAA is not responsible for the payment of CV-AC services and that Mr. Wilson is the sole owner of CV-AC.

44. Although Mr. Moore and Mr. Minor were aware that Mr. Wilson is Plaintiff's husband, Plaintiff contends she has no role in her husband's company.

45. Moreover, JMAA has no contract with W2-AC and Plaintiff never offered

6

one to W2-AC.

46. On October 6, 2023, in response to Plaintiff's Charge, JMAA submitted a Position Statement to the EEOC.

47. On October 26, 2023, Plaintiff amended her previously filed EEOC Charge.

48. JMAA's Position Statement alleges that, "JMAA hired Geter as a Contract Compliance Specialist in November 2021. In her role, Geter was responsible for performing regular inspections and appraisals to ensure effective contract compliance processes and identifying potential gaps in compliance and regulatory procedures—specifically with JMAA's Disadvantaged Business Enterprise (DBE) Program. Geter reported to a variety of people over the course of her employment, including Jack Thomas, former Director of DBE; John Means, former Acting CEO/COO; Marvin Buckhalter, Acting Director of DBE/Director of Procurement; Patrick Minor, Acting Assistant COO/Director of Hawkins Field Airport. She regularly received full training regarding her job responsibilities and JMAA's employment policies, procedures, and methods."

49. Plaintiff contends this allegation contains false information.

50. Contrary to the allegation that Plaintiff "received full training…", she contends that Director of Human Resources Andrea Moore denied her training pertaining to Title 10, Airways, FAA, Title VI, and other federal regulations related to billing, goal setting, and contracts.

51. Similarly, Mr. Means, Patrick Minor, and Mr. Moore denied Plaintiff training on the only system JMAA has for tracking Disadvantaged Business Enterprise and

7

other engagement for outreach of state-to-state B2G training, AMAC, Contract ACCA, all training for contract-compliant specialists.

52. Because Plaintiff's incidents involved upper management, she went directly to the board of commissioners for relief from the retaliation, the sex discrimination, and the hostile work environment, but they took no action.

53. However, JMAA did offer Plaintiff $15,000 to leave the company and not discuss what happened to her.

54. JMAA's Position Statement alleges that, "As a preliminary matter, Geter's June 12, 2023 charge of discrimination is untimely as to events that took place prior to December 14, 2022. Geter was required to file her charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); e.g., *Liddell v. Northrop Grumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 450 (S.D. Miss. 2010). But Geter's charge describes events that took place outside of the 180-day window and before JMAA changed Geter's supervisor from Buckhalter to Minor. Those allegations include:

- "I spoke to Mr. Buckhalter, Mr. Means, and Moore about my treatment, as they would often say things such as Women are to be seen, not heard and Women are to give ideas that men would implement."
- "Mr. Buckhalter would refer to women as fifty cents and a dime."
- "I also witnessed Mr. Buckhalter inappropriately touch women and refer to women as girls."
- "Mr. Means would also participate in women bashing."

Accordingly, because these allegations, which JMAA flatly denies, could only have

8

occurred before December 14, 2022, these allegations are untimely and must be barred consideration."

55. Plaintiff contends that although the Charge was not filed until June 12, 2023, as is evidenced by the EEOC Initial Inquiry documentation, she first reached out to the EEOC and complained of sex discrimination and retaliation on February 2, 2023.

56. Moreover, as described above, in November 2022, Plaintiff first complained of Mr. Buckhalter's sex discriminatory statements to Human Resources Representatives Samuel Hudson and Kenntria Cotton.

57. JMAA's Position Statement alleges that, "Nor can Geter rely on the continuing violations doctrine. To show a continuing violation, Geter must prove that the separate acts are related, and that the violation was continuing (i.e., 2 To the extent not expressly admitted, JMAA denies the allegations in Geter's charge. 3 PD.43277793.1 intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it). *Health v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 738 (5th Cir. 2017). JMAA reassigned Minor as Geter's supervisor in December 2022 and Buckhalter was disciplined in January 2023. These intervening actions sever the untimely allegations from the timely allegations. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 329–30 (5th Cir. 2009) (holding that plaintiff could not rely on continuing violation doctrine when employer reprimanded supervisor and reassigned the supervisor). Additionally, Geter, in January 2023, explained to JMAA's outside investigator that she was no longer being harassed. Geter's own admission further demonstrates that her harassment was not continuing over the pre- and post-limitations periods. Consequently, Geter cannot rely on the

9

continuing violations doctrine to hold JMAA liable for any pre- December 14, 2022 allegations."

58. Plaintiff adamantly denies the allegation that she told an outside investigator, or anyone else, that she was no longer being harassed.

59. Quite to the contrary, Plaintiff contends she repeatedly asserted to Terry Springer and the Board of Commissioners that since reporting her complaint of sex discrimination, she had faced ongoing retaliation, e.g., (passed over for the of Director of Disadvantage Business Enterprise (DBE) position in December 2022) and hostile treatment from Mr. Means, Mr. Buckhalter, Mr. Minor, and Mr. Moore.

60. JMAA's Position Statement alleges that, "Turning to the merits, Geter alleges that she applied for the position of DBE Director in December 2022 and March 2023 but was denied the position because she is a female.

It is Geter's burden to state a prima facie case of discrimination for failure to promote. To do so, Geter must show that (1) she was a member of a protected class; (2) she was qualified for the position; (3) that, despite her qualifications, she was rejected; and (4) another, not in the protected class, was treated more favorably. Even if Geter was able to set forth a prima facie case for sex discrimination, she also must be able to rebut the legitimate, nondiscriminatory reasons provided by JMAA to explain the challenged employment action. Geter bears the ultimate burden of establishing that JMAA's stated reason for taking action was merely pretextual, and that sex discrimination was the real reason.

Geter cannot establish a prima facie case of sex discrimination based on failure to promote. JMAA concedes that Geter is a member of a protected class (female), but

JMAA denies that Geter was qualified for the position and that another, not in her protected class, was treated more favorably. In her charge, Geter erroneously alleges that JMAA hired Tina Cox as DBE Director. While a recommendation was made to hire Cox for the position, JMAA ultimately did not hire Cox and the DBE Director position remains vacant. JMAA is not recruiting any individuals to fill the DBE Director position. For these reasons, Geter fails to set forth a prima facie case of discrimination, and her claim must be dismissed.

Even if Geter could prove a prima facie case, Geter's charge contains no suggestion of discriminatory intent, and she has no evidence to support such a claim. Beckett, JMAA's current CEO, was the decision maker with regard to hiring Cox for the position. Beckett, like Geter and Cox, is a female. Additionally, there is no causal connection between Geter's protected class and JMAA's decision not to hire Geter as DBE Director. The decision to recommend Cox for the position (instead of Geter) was grounded in the fact that Cox was the more qualified candidate. Unlike Geter, Cox is USDOT DBE certified and has over 20 years of work experience, and Geter does not even allege that she was more qualified than Cox. Rather, Geter simply maintains that Cox was "friends" with Means. In sum, there is no evidence showing that JMAA's denial of Geter to the DBE Director position was predicated on sex discrimination, and Geter has not identified any similarly situated, non-female employees who were treated more favorably. Indeed, Geter lacks even minimal support for the proposition that JMAA was motivated by discriminatory intent in the failure to promote. Accordingly, Geter's conclusory allegations are insufficient to state a claim for discrimination based on failure to promote, and she has no evidence that anyone at JMAA harbored any discriminatory

animus towards her. Geter's sex discrimination claim must be dismissed. (Geter alleges that she was not paid "additional compensation." As an employee, Geter cannot unilaterally raise her pay. JMAA fully compensated Geter throughout her employment.)"

61. Plaintiff contends that after she reported Mr. Buckhalter's sex discriminatory statements to Human Resources Representatives Samuel Hudson and Kenntria Cotton in November 2022, in December 2022, she was given a poor job performance evaluation by Mr. Buckhalter, then that same month she was passed over for the DBE Director (a position for which she was the most experienced and qualified), and then in May 2023 she was written up for allegedly displaying insubordinate behavior toward Mr. Means.

62. Plaintiff contends that all these actions collectively illustrate the retaliatory animus that Plaintiff became the target of after she made her complaint of sex discrimination in November 2022.

63. This retaliatory animus became even more intensified when she filed her EEOC Charge on June 12, 2023.

64. JMAA's Position Statement alleges that, "Geter alleges that the denial of promotion was retaliatory. To establish a prima facie case of retaliation, Geter must show that (1) she engaged in a protected activity; (2) she subsequently experienced an adverse employment action; and (3) her protected activity was a substantial motivating reason for JMAA's decision to take the action about which she complains.

JMAA denies that Geter engaged in a protected activity. At best, Geter alleges that she complained to the Board (i.e., unspecified complaint) and threatened to file an EEOC charge. Even if these conversations took place, Geter has not alleged that a causal

connection exists between the protected activity and failure to promote, and Geter cannot rebut JMAA's legitimate, non-retaliatory reasons for selecting Cox as DBE Director. In short, there is no evidence that JMAA took any employment action against Geter based on retaliation. Geter's retaliation claim must be dismissed."

65. Plaintiff contends this allegation mischaracterizes the events that occurred.

66. As already stated, after she reported Mr. Buckhalter's sex discriminatory statements to Human Resources Representatives Samuel Hudson and Kenntria Cotton in November 2022, in December 2022, she was given a poor job performance evaluation by Mr. Buckhalter, then that same month she was passed over for the DBE Director (a position for which she was the most experienced and qualified), and then in May 2023 she was written up for allegedly displaying insubordinate behavior toward Mr. Means.

67. Plaintiff contends that all these actions collectively illustrate the retaliatory animus that Plaintiff became the target of after she made her complaint of sex discrimination in November 2022.

68. This retaliatory animus became even more intensified when she filed her EEOC Charge on June 12, 2023.

69. JMAA's Position Statement alleges that, "To establish a claim of sex-based hostile work environment, Geter must show that (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms

and conditions of employment and create a discriminatorily abusive working environment; and (5) a specific basis exists for imputing objectionable conduct to JMAA. Geter cannot establish a claim for sex-based hostile work environment. Though Geter is a member of a protected class (female), Geter cannot show that she was subjected to inappropriate or unwelcome verbal or physical harassment, and she has no evidence linking any alleged harassment to her protected characteristic. In her charge, Geter implies that she received a negative performance evaluation from Buckhalter, but although the performance evaluation contained comments regarding the need for improvement in teamwork and performance, the evaluation scored Geter's performance as a 3, which means Geter was meeting Buckhalter's expectations. Furthermore, Geter does not maintain that she was subject to any sex-based jokes, comments, or other statements relating to her sex, during the limitations period or that she experienced any physical harassment or threatening conduct. But even if Geter's (conclusory) allegations were true, which JMAA again denies, the incidents described in Geter's charge would not constitute harassment based on a protected characteristic, much less to the level of "severe and pervasive" harassment. Geter's sex-based hostile work environment claim must be dismissed."

70. Plaintiff contends that the hostile work environment stemmed from the ongoing retaliatory actions to which she was subjected by Mr. Buckhalter, Mr. Means, Mr. Moore, and Mr. Minor after she made her complaint of sex discrimination in November 2022.

71. These retaliatory actions have been described in detail above.

72. Following June 12, 2023, JMAA retaliated for the final time by terminating

Plaintiff on June 30, 2023.

73. As described above, Plaintiff contends the allegations given as a basis for this action were unfounded and were a collective pretext for retaliation against Plaintiff after she made her complaints of sex discrimination.

## CAUSES OF ACTION

### COUNT I: VIOLATIONS OF TITLE VII – HOSTILE WORK ENVIRONMENT

74. Plaintiff re-alleges and incorporates all averments set forth in paragraphs through 73 above as if fully incorporated herein.

75. By the actions described above, Plaintiff has been discriminated against in the terms and conditions of her employment on the basis of her sex, female.

76. By the actions described above, Defendant violated Title VII by subjecting Plaintiff to a hostile work environment.

77. Plaintiff has been harmed as a result of the Defendant's discrimination, and the Defendant is liable to the Plaintiff for the same.

78. The acts of the Defendant constitute a willful intentional violation of Title VII of the Civil Rights Act of 1964, as amended, and entitle Plaintiff to recovery of damages.

### COUNT II: VIOLATION OF TITLE VII - RETALIATION

79. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 78 above as if fully incorporated herein.

80. Defendant retaliated against Plaintiff by terminating her employment for making a complaint of sexual harassment.

81. The effect of the events described above deprived Plaintiff of equal

employment opportunities in retaliation for exercising her federally protected rights.

82. The unlawful actions of the Defendant complained of above were intentional.

83. The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

84. Plaintiff is entitled to protection from retaliation for making complaints or charges of discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*

85. The acts of the Defendant constitute a willful intentional violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.,* and entitle Plaintiff to recovery of damages, both pecuniary and punitive in nature.

### COUNT III: VIOLATIONS OF TITLE VII – SEXUAL HARASSMENT

86. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 85 above as if fully incorporated herein.

87. By the actions described above, Plaintiff has been discriminated against in the terms and conditions of her employment on the basis of her sex, female.

88. By the actions described above, Defendant violated Title VII by allowing its employees to sexually harass Plaintiff in the workplace and by subjecting Plaintiff to a sexually hostile work environment.

89. Plaintiff has been harmed as a result of the Defendant's discrimination, and the Defendant is liable to the Plaintiff for the same.

90. The acts of the Defendant constitute a willful intentional violation of Title VII of the Civil Rights Act of 1964, as amended, and entitle Plaintiff to recovery of

damages.

## COUNT IV: VIOLATION OF TITLE VII - SEX DISCRIMINATION

91. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 90 above as if fully incorporated herein.

92. Defendant discriminated against Plaintiff because of Plaintiff's sex, female, based on the facts identified above which constitutes violation of Title VII of the Civil Rights Act of 1964.

93. Defendant was motivated to discriminate against Plaintiff because she is female.

94. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep humiliation, anxiety and emotional distress.

95. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff giving rise to to both compensatory and punitive damages under Title VII.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages;
2. Reinstatement or future wages in lieu of reinstatement;
3. Compensatory damages;
4. Punitive damages;
5. Attorney's fees;
6. Lost benefits;
7. Pre-judgment and post-judgment interest;
8. Costs and expenses; and
9. Such further relief as is deemed just and proper.

THIS the 13th day of January 2026.

          Respectfully submitted,

          MARY GETER, Plaintiff

By: /s/Louis H. Watson, Jr.
     Louis H. Watson, Jr.  (MB# 9053)
     Jane A. Watson (MB# 106877)
     Attorneys for Plaintiff

OF COUNSEL:

THE WATSON LAW FIRM, PLLC
1501 Jackson Ave W STE 113 PBM 101
Oxford, MS 38655-2566
Phone: (601) 968-0000
Facsimile: (601) 968-0010
louis@thewatsonlawfirm.com

## **CERTIFICATE OF SERVICE**

I, Louis H. Watson, Jr., attorney for the Plaintiff, do hereby certify that I have this day served via ECF filing or by United States mail, postage prepaid, a true and correct copy of the above and foregoing document to all counsel of record:

SO CERTIFIED, 13th day of January, 2026.

          /s/ Louis H. Watson, Jr.
          LOUIS H. WATSON, JR.